PHILIP DUMES, Plaintiff, *v.* WILLIAM S. SIZER, Defendant.

*Master and servant — defective machinery — burden of proof where there are several causes for an accident.*

In an action brought to recover damages resulting from injuries alleged to have been caused by the negligence of the defendant, it appeared that at the time of the accident the plaintiff, who was a "heater" at a steam forge, was employed in taking out and replacing the upper die of a steam hammer, which was controlled by a lever which admitted or shut off steam. A person named Reeves, who was in control of the lever, adjusted it in such a manner as to raise the ram above the die about two feet, thus enabling the upper die to be reached, and in this position the lever was held by a set screw screwed tight. The die was turned around, and the plaintiff attempted to insert an iron toggle designed to hold the upper die to the ram, but the die would not connect with the ram, and an attempt was then made by another person to drive it into position by a sledge hammer; this jarred the hot toggle, which fell upon the bed plate, and the plaintiff, making a holder of his hat, picked it up, and, while he was attemping to replace it, the ram fell and crushed his hand.

Reeves testified, in effect, that the lever had nothing to do with the accident, and that after it he found the set screw to be tight. There was also evidence that if the machine had been in proper condition the valve would not have moved

with the lever set, and that unless the valve did move the ram could not fall; that the ram leaked steam and made a squeaking noise when the hammer was raised, and would occasionally stick at the top and at the bottom of the machine, so that steam would not move it, and resort to a sledge hammer was necessary, and that immediately after the accident the ram got beyond control and bounced up and down.

*Held,* that the defendant was bound to furnish the plaintiff, his employee, with a safe place in which, and reasonably safe machinery with which, to do his work;

That, upon all the evidence, the accident must be attributed to some defective condition of the machinery;

That, while the cause of the accident was not entirely clear, and while where two or more causes operate to produce the injury complained of, for one or more of which the defendant is not responsible, the plaintiff must establish by affirmative proof that his injury is wholly or partially the result of a cause for which the defendant was responsible, yet the jury would have been justified in this case in finding that the accident resulted from defective machinery for which the defendant was responsible.

MOTION by the plaintiff, Philip Dumes, for a new trial upon a case containing exceptions, ordered to be heard at the General Term in the first instance upon the granting of the defendant's motion for a nonsuit after a trial at a Trial Term of the Superior Court of the city of Buffalo on the 17th day of January, 1895.

Upon the 24th day of January, 1894, the plaintiff while in the service of the defendant at his steam forge, in the city of Buffalo, met with an accident, in consequence of which the larger portion of his right hand was crushed to such an extent that amputation of the injured part was rendered necessary, and this action is brought to recover damages for such injury.

The plaintiff, who was thirty-five years of age, had been at the time of the accident in the defendant's employ about eighteen months, and his principal occupation was that of a "heater."

The defendant had in operation in his business six hammers, of great force and weight, which were worked by steam power, and each of which was managed by a separate gang of men. Upon the forenoon of the day in question, the plaintiff, who, it seems, was a member of gang No. 1, was called upon to assist in taking out the upper die of his hammer, in order that it might be replaced with another. The die to be thus replaced weighed about 600 pounds and had to be lifted from an iron buggy on to the lower die. Before this was done, the iron ram was raised about two feet from the die

by the working of a lever, which was retained in this position by means of a set screw. While the ram was thus suspended the work of changing the die proceeded. The new die was turned around in order to adjust it to the ram, and then the plaintiff attempted to insert, in its proper place, an iron toggle, which was designed to fasten the upper die to the ram. While this attempt was being made it was discovered that the die was not in a proper position to connect with the ram, and the hammersman thereupon attempted to sledge it into position, and in doing so jarred the toggle so that it fell down upon the bed plate. The plaintiff started to pick it up, but finding it hot he took off his hat, made a holder of it, and then picked up the toggle, and while attempting to replace it the ram fell and crushed his hand in the manner stated.

During the entire time occupied in changing the dies, one McDougall, the defendant's superintendent, was standing by, apparently directing or overseeing the work.

Such additional facts as are material are stated in connection with what follows.

*C. S. Crosser*, for the plaintiff.

*Adolph Rebadow* and *Spencer Clinton*, for the defendant.

ADAMS, J.:

In moving for a nonsuit at the close of the plaintiff's evidence, the defendant's counsel insisted, as he does now, that there was a total failure upon the part of the plaintiff to prove the absence of contributory negligence, and that this, of itself, afforded sufficient reason for granting the motion. It is apparent, however, that this contention very properly received little or no consideration from the trial court, for it seems quite clear that the question of the plaintiff's own negligence was one for the jury to consider, whatever view may be taken respecting the real ground upon which the decision of the motion was made to rest. In reviewing this decision, therefore, the controversy is confined to the single inquiry of whether or not, upon the undisputed facts furnished by the record, it can fairly be said that the case is so barren of any evidence of negligence upon the part of the defendant as to justify the court in withholding that question from the consideration of the jury.

In entering upon a brief consideration of these facts, it will be well, perhaps, to bear in mind certain principles of law which may be regarded as fundamental in this as well as in all similar cases.

The relation of master and servant existed between these parties, and this relationship imposed upon the defendant the duty of exercising a proper degree of care in order that the plaintiff should be furnished a reasonably safe place in which, and reasonably safe machinery with which, to render the service required of him, and unless the evidence is such that a jury might properly draw therefrom the inference that the defendant had, in one or the other of these particulars, been remiss in the duty which he owed to the plaintiff, the latter can, of course, have no standing in court. And in this connection it may also be advisable to advert to another well-settled rule which is applicable to this case, and that is, that where two or more causes operate to produce the injury complained of, for one or more of which the defendant was not responsible, the plaintiff must establish by affirmative proof that his injury was wholly or partially the result of a cause for which the defendant was responsible. (*Searles* v. *Manhattan Ry. Co.,* 101 N. Y. 661; *Grant* v. *The P. & N. Y. C. & R. R. Co.,* 133 id. 657.)

Now, it may be safely assumed that the accident which deprived the plaintiff of the use of his hand was either an unavoidable one, or else it was caused by a defect in the appliances and machinery furnished by the defendant, or by some negligent act of a co-employee, and to ascertain to which of these three causes it is justly attributable, is the first duty imposed by this review. The only person occupying the relation of a co-employee, whose opportunity or occupation can by any possibility furnish an adequate explanation of the accident, is the young man Reeves, who adjusted the lever in such a manner as to raise the ram above the die and keep it suspended in that position. It appears that his duty required him to occupy a position near the lever at the time of the accident, and that if he had moved the motion lever ever so slightly the effect would have been to shut off the steam and allow the ram to fall; but he swears in the most positive manner that he did not touch the lever, and there is no evidence, other than the falling of the ram, which tends in any way to contradict him, and, therefore, it was very properly conceded upon the argument that for the purpose of this review it must be

assumed that he told the truth. This being so, the theory that the plaintiff's injury was in any sense the result of negligence upon the part of a co-employee, is pretty effectually eliminated from the case, and in like manner the evidence of the plaintiff's witnesses would seem to exclude the idea that the dropping of the ram was the result of an unavoidable accident, for the witness Reeves testifies that he raised it in the usual manner, and that when it stopped he fastened the set screw so that the lever could not be moved, and that, after the accident, he raised the ram in order that the plaintiff's hat might be removed, and that he then "found the set screw screwed tight." This evidence is supplemented by that of the witnesses Herschler and Hire, two expert machinists, the former having been in the defendant's employ for eleven years, who testify that if the machine had been in proper condition the valve would not have moved with the lever set, and that if the valve could not move the ram could not come down. This process of exclusion, therefore, fairly justifies the inference that the dropping of this ram was attributable to the second of the three causes mentioned — in fine, to some defective condition of the machinery itself; and this inference finds additional support in the facts testified to by the various witnesses who were called by the plaintiff.

The witness Sullivan, who was at work for the defendant at the time of the accident, tells us that he saw this hammer when it was new and in good condition, and that it then worked constantly and evenly, but that at the time of the accident it leaked steam and made a squeaking noise when he raised it, so that it could be heard all over the shop; that the ram would occasionally stick at the bottom and also at the top of the machine, so that steam pressure would not move it and it had to be started by a blow from a sledge hammer; that this condition of things had existed for two or three months prior to the accident, and that he saw McDougall, the superintendent, present at different times when the hammer was not working properly.

The witness Robinson testified that he heard the peculiar noise that Sullivan speaks of, and saw the ram stick, and that when it was started by a blow it would fly up suddenly, and that he also discovered there was a little lost motion to the hammer.

Several of the witnesses say that the space in the slide block had

been considerably worn by constant use, and that this afforded more play to the slide than was the case when the hammer was first set up, which was some three years prior to the accident; and it is likewise made to appear that this fact was brought to the superintendent's notice; that he directed the men to keep the slide block well oiled, and remarked that he would have to put in a new one soon; and that upon one occasion, in December, 1893, when asked if that was not a good time to repair this hammer, he replied, in substance, that he was going out in the oil country to look up work, and that, as they were going to move the hammer soon, it was not worth while to make any repairs at that time. The witness Reeves also testified that, within ten minutes after the accident, the ram kept bouncing up and down, and he could not keep it still.

With these and other similar facts, which it is unnecessary to particularize, upon which to establish a hypothesis, two expert witnesses, whose experience appears to have qualified them to speak upon the subject, expressed the opinion that if the ram had been hung up and secured in its position, as described by the witness Reeves, the jarring occasioned by the other hammers in the building would move the valve and let the ram drop; or, in other words, that the wearing away of the different parts occasioned a loss of motion, and that this loss of motion permitted the ram to fall, although steam was on and the levers fastened.

It is insisted, however, that, giving to these various facts all that can possibly be claimed for them, the precise cause of the accident still remains unexplained, and that the only effect of sending the case to the jury would have been to permit them to render a verdict with no more substantial foundation upon which to rest it than the merest conjecture, but this, we think, is a conclusion which the circumstances of the case will hardly warrant, and in saying this, it may be conceded that there is an element of uncertainty in these circumstances which would quite possibly deprive any conclusion reached by finite minds of that absolute verity which the verdict of a jury is supposed to represent; but, nevertheless, we have here presented certain effects, and, with certain causes therefor excluded from our consideration, and all the material facts pointing in one direction, it does not become altogether a mere matter of speculation to determine of what such effects are the probable resultant.

At all events, this case, with its attendant circumstances, can very properly be classified as one of those in which the presumption of negligence arises from the fact that the accident would not, in the ordinary course of affairs, have happened, but for the omission of reasonable care upon the part of the person charged with its exercise, and, consequently, in the absence of any explanation by the defendant, it is one in which the jury would have been warranted in reaching the conclusion that the defendant had been negligent in that he had failed in his duty to furnish the plaintiff with machinery and appliances which were reasonably safe, and that the latter's injury was wholly or partially the result of such failure. (*Breen* v. *The N. Y. C. & H. R. R. R. Co.*, 109 N. Y. 297; *Mullen* v. *St. John*, 57 id. 567; *Caldwell* v. *N. J. Steamboat Co.*, 47 id. 282; *Lyons* v. *Rosenthal*, 11 Hun, 46; *Hillis* v. *Hine*, 11 N. Y. St. Repr. 656; *Moran* v. *Racine Wagon Co.*, 26 N. Y. Supp. 852.)

We, therefore, conclude that it was error to withdraw the case from the consideration of the jury, and that because of such error a new trial should be granted.

All concurred.

Motion granted and a new trial ordered, with costs to abide the event.